J-A22003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ABDUL TROY GASTON :
:
Appellant : No. 1833 MDA 2019

Appeal from the Judgment of Sentence Entered October 10, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004157-2018

BEFORE: SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED OCTOBER 02, 2020**

Abdul Troy Gaston (Appellant) appeals from the judgment of sentence imposed after he was convicted of two counts of possessing a controlled substance with the intent to deliver (PWID); three counts of possessing drug paraphernalia; and the summary offense of failing to use a turn signal.[1]

On appeal, Appellant challenges the trial court's denial of his suppression motion, and presents a single question:

> Did Officer McGowan state specific and articulable facts that [Appellant] violated a motor vehicle code when he, [Appellant], complied with the laws of traffic?

Appellant's Brief at 1.

Appellant argues that the trial court erred in denying his suppression motion because he "complied with the laws of traffic" and "was not required

---

[1] 35 P.S. §§ 780-113(a)(30), (32); 75 Pa.C.S.A. § 3334.

to activate his left-hand turn signal to drive straight." Appellant's Brief at 9, 12. Appellant contends that because he did not violate the Vehicle Code, Officer McGowan lacked probable cause to initiate a traffic stop, and as a result, the stop was unconstitutional and the evidence obtained from the stop should have been suppressed.

Preliminarily, we recognize:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted). Importantly, our scope of review is limited to the evidentiary record from the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

As to the statutory requirement to use a turn signal, the Vehicle Code states:

Upon a roadway no person shall turn a vehicle or move from one traffic lane to another **or enter the traffic stream** from a parked position unless and until the movement can be made with

- 2 -

reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S.A. § 3334(a) (emphasis added). Probable cause is required for a traffic stop under Section 3334(a) of the Motor Vehicle Code. *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1096 (Pa. 2013).

Instantly, the officer who initiated the traffic stop was the only witness to testify at the suppression hearing. The trial court summarized the evidence as follows:

Officer Chad McGowan (hereinafter "Officer McGowan") has been employed by the Harrisburg City Police for the past seven (7) years. (Notes of Pre-Trial Suppression Hearing held on February 5, 2019, hereinafter "N.T." 3, 4). On June 27, 2018, Officer McGowan was working for the Street Crimes Unit. (N.T. 4). That day, Officer McGowan made a traffic stop of [Appellant]. (N.T. 5). [Appellant]'s vehicle was traveling southbound on North 7th Street in the opposite direction of Officer McGowan. *Id.* Officer [McGowan] observed [Appellant] leaning very heavily towards his right buttocks with his hand and arm concealing his face. (N.T. 6). Officer McGowan also observed a passenger slumped so far in the passenger seat that he could only see the very top of that person's head. (N.T. 7). Officer McGowan turned his vehicle around in hopes of ascertaining the vehicle's registration and license plate. *Id.* Officer McGowan determined that the vehicle had a Missouri registration and was a rental. *Id.*

[Appellant] was traveling southbound on North 7th Street, had approached a congested intersection of North 7th Street and State Street. (N.T. 8-9). [Appellant] came to a complete rest for a clearly marked stop sign at the intersection and then began traveling from North 7th Street onto State Street and did not properly signal. (N.T. 9). As a vehicle approaches State Street on North 7th Street, the road is broken down into multiple lanes. (N.T. 10). There are large white arrows that have been painted on the roadway indicating lanes of travel and suggested movements for that individual lane. (N.T. 12). The lane in which [Appellant]

was traveling indicated a direction to the left. *Id.* There are two stop signs at the intersection. (N.T. 16). Immediately beneath both stop signs there is a sign that says no left-hand turn. *Id.* This sign is to indicate that vehicles are not to enter in the westbound lane of travel. (N.T. 18).

Officer McGowan initiated a traffic stop at 14th and Regina because [Appellant] had not properly indicated or signaled his new direction of travel. (N.T. 14).

Trial Court Opinion, 1/2/20, at 2.

After hearing the evidence and the parties' respective arguments, the trial court denied Appellant's suppression motion. The court concluded, "I believe the officer did articulate very well, in fact, the reasons for his stop, his observation, and I believe it was reasonable for the stop." N.T., 2/5/19, at 22.

Appellant argues to the contrary, stating:

In the present case, Officer McGowan stopped [Appellant's] vehicle for his failure to use his left turn [signal] in alleged violation of 75 Pa.C.S.A. §3334(a) (Turning Movements and Required Signals). 75 Pa.C.S.A. §3334(a) states that "[U]pon a [roadway] no person shall turn a vehicle or move from one traffic lane to another or enter the stream of traffic from a parked position... without giving an appropriate signal in the manner provided in this section."

Simply stated [Appellant] did not violate the code because the appropriate signal to drive straight is no signal at all. When [Appellant] arrived at the stop sign, there were two signs that read "No Left-Hand Turn" immediately below the duel [*sic*] stop signs located at the intersection. Notably, Officer McGowan did not realize these signs were there when he stopped [Appellant]. To proceed from the stop sign, [Appellant] had three options. He could turn right, ignore the no left turn signs and make an illegal left turn, or continue straight. [Appellant] continued to drive straight. Accordingly, he was not required to activate his left-hand turn signal to drive straight.

- 4 -

Appellant's Brief at 12.

We are not persuaded by Appellant's characterization of how he negotiated the intersection. Officer McGowan—the only witness—was asked to describe the intersection, the "ingress and egress between the two streets to move from one street to another," and responded:

> It's a very unique intersection. It's very busy. There's several lanes.
>
> Basically, [Appellant] was traveling southbound on North 7th Street, had approached this congested intersection of North 7th Street and State Street. He had to come to a complete rest for a clearly marked stop sign at the intersection and then began traveling from North 7th Street onto State Street and did not properly signal.

N.T., 2/5/19, at 8-9.

From the above testimony, Officer McGowan perceived that Appellant failed to signal in violation of the Vehicle Code after he stopped at the stop sign, and began traveling south from North 7th Street, and then east onto State Street.

Further, Appellant does not cite any analogous case law. Both the deputy district attorney and defense counsel agreed "there is no [case law] dealing with an intersection like this." N.T., 2/5/19, at 20. However, the deputy district attorney at both the suppression hearing and on appeal, has cited **Commonwealth v. Spieler**, 887 A.2d 1271, 1275 (Pa. Super. 2005), to emphasize that probable cause "does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most

- 5 -

likely inference." Commonwealth Brief at 5-6; *see also* N.T., 2/5/19, at 20.

In *Spieler*, this Court stated:

> While an actual violation of the [Vehicle Code] need not ultimately be established to validate a vehicle stop, a police officer must have a reasonable and articulable belief that a vehicle or driver is in violation of the [Vehicle Code] in order to lawfully stop the vehicle. The issuance of a citation by an officer for a violation of the [Vehicle Code] is a matter within the sole discretion of that officer.

*Spieler*, 887 A.2d at 1275 (citation omitted).

Again, the parties do not dispute that Appellant was driving in a "complicated intersection with numerous lanes of travel," or that Officer McGowan articulated his belief that Appellant was required to use a turn signal when driving south on North 7th Street, and then east onto State Street.[2] *See* Commonwealth Brief at 7.

As noted, Officer McGowan was the only witness to testify at the suppression hearing. He opined:

> It was my understanding, it's still my understanding, my opinion, even after speaking with our Traffic Safety Unit, [Appellant] was originally traveling on North 7th Street southbound. When he came to that stop, he then turned his motor vehicle and began traveling on a different roadway in a different direction. He went

_____

[2] On May 19, 2020, the Commonwealth filed in this Court a "Motion to Correct Omission in Record," asking us to order that the record be supplemented to include two exhibits "crucial to the determination on appeal." Motion at ¶ 5. We granted the request by order entered May 20, 2020, and on June 2, 2020, the record was supplemented to include from the suppression hearing Commonwealth Exhibits 1 and 2, with Exhibit 1 being a Google Map depicting an aerial view of the multiple lanes of North 7th Street and State Street connecting with the State Street Bridge, and Exhibit 2 being an "on street" Google Map view traveling south on North 7th Street and approaching the intersection of State Street and North 7th Street. *See* N.T., 2/5/19, at 9-11.

from traveling southbound North 7th Street to making a left-hand turn, traveling eastbound on State Street. According to the Motor Vehicle Code, Title 75, Section 3334, that requires the operator to activate a turn signal to indicate –

\*\*\*

It was -- I believed at that time that [Appellant] had not properly indicated or signaled his new direction of travel, and that's why I eventually initiated a traffic stop at 14th and Regina.

Q:    Okay.  That was the entirety of the basis of why you stopped the car?

A. Yes, ma'am.

N.T., 2/5/19, at 12-13.

Officer McGowan's testimony supports the trial court's factual finding that "Appellant's vehicle changed direction from southbound North 7th Street to eastbound State Street without activating his turn signal in violation of the Motor Vehicle Code."   Trial Court Opinion, 1/2/20, at 3-4.   The court continued:

Officer McGowan also testified that he did not have any idea that Appellant was driving the vehicle nor did he target him in any way. Officer McGowan's suppression hearing testimony describing his observations of Appellant's operation of his vehicle was sufficient to establish probable cause to believe Appellant violated the Motor Vehicle Code for failure to activate his turn signal.

*Id.* at 4.

The Commonwealth notes that the Motor Vehicle Code "is silent as to what constitutes a turn," and asserts "it was objectively reasonable for Officer McGowan to conclude that when [Appellant] moved his vehicle in a marked left–turn lane from one roadway to another that it was a turn requiring the

use of a signal under the statute." Commonwealth Brief at 7. Upon review of the record—including the Google Map depictions admitted into evidence as Exhibits 1 and 2—as well as the this Court's decision in *Commonwealth v. Brown*, *supra*, we agree.

The Commonwealth cites *Brown,* where a police officer observed the appellant make a left turn from one street onto another without using a turn signal. We stated:

> Seeing this himself, [the officer] **unquestionably possessed facts to warrant belief by any reasonable person that Appellant violated the vehicle code**.
>
> Appellant argues that the lane from which he turned was designated for left turns only, giving Appellant no option other than to turn left. Appellant claims that he gave the proper signal because "[b]eing in the lane is already a signal of the intention to turn."
>
> This is an issue of first impression in Pennsylvania.
>
> The statute requires use of a signal lamp or a hand signal when making a turn, and provides no exception for turns made from a lane designated for turns only. Appellant did not signal. Therefore, [the officer] was justified in initiating the traffic stop.

*Brown*, 64 A.3d at 1106 (emphasis added, citation omitted).

The decision in *Brown* is instructive. We observed that Section 3334 provides no exception for turns made from a lane designated for turns only; in fact, it does not provide any exception. Further, and as the Commonwealth states, "the Motor Vehicle Code is silent as to what constitutes a turn." Commonwealth Brief at 7.

More than 50 years ago, in a personal injury action arising from an automobile accident, the Pennsylvania Supreme Court found that one of the defendants was not obligated to signal under a predecessor and since-repealed statute, 75 Pa.C.S.A. § 1012(a).[3]  The Court said:

> As to Section 1012(a), that section requires the prescribed signal when an automobile is turning from a 'direct line.' It seems to us that Section 1012(a) is entirely inapplicable to this situation. [The driver] did not turn from a direct line. She merely followed a curving highway, a continuous and unbroken stretch of road before her. **Surely Section 1012(a) does not require a driver to give a signal to indicate that the road which he is traveling is about to curve**.

***Vescio v. Rubolino***, 249 A.2d 914, 916 (Pa. 1969) (emphasis added).

We recite the above language to emphasize that in this case, Appellant was not merely "following a curving highway" or veering left on an "unbroken stretch of road."   The record supports the trial court's factual findings.

_____

[3] Section 1012(a) of the Motor Vehicle Code provided:

The driver of any vehicle upon a highway before starting, stopping, turning from a direct line, moving from one traffic lane to another or entering the traffic stream from a parked position, shall first see that such movement can be made with safety. If any pedestrian may be affected by such movement a clearly audible signal shall be given by sounding the horn. Before making any such vehicle movement, the driver shall give a plainly visible signal in the manner described in this section. The signal shall be given one hundred (100) feet in advance of and during the turning movement or a lane change. The signal shall be given prior to movement of the vehicle and prior to and during entry of the vehicle into the traffic stream from a parked position. Stopping signals shall be given during the time vehicle speed is being reduced by braking.

Appellant was driving in a unique, congested and busy area, "broken into multiple lanes," and with large white arrows painted on the road indicating lanes of travel and suggested movements for that individual lane. Although he continued in the same lane, Appellant drove south on North 7th Street, and turned east onto State Street.

For the above reasons, we discern no error in the trial court's denial of Appellant's suppression motion — consistent with the court's factual findings from the testimony of the only witness, Officer McGowan — where the court determined that Officer McGowan had probable cause to initiate the traffic stop based on his reasonable and articulable belief that Appellant violated the Vehicle Code.

Judgment of sentence affirmed.

Judge Stabile joins the memorandum.

Judge Shogan notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2020